Culp v. Commissioner of Internal Revenue, Appellate No. 22-1789. Good morning, Your Honor. May it please the Court. My name is Oliver Roberts, and I represent the appellants, Isobel and David Culp. I'll be addressing the issue of jurisdiction under Section 6213A. I'll be speaking for 10 minutes, of which I'd like to reserve two of that for rebuttal. That's granted. Thank you. Today's case is about two retired teachers, the Culps, who worked hard, paid their taxes, and followed the rules. We know the facts. We'd like to talk about the law. If we could go right to the statute. Yes, Your Honor. Yes. If 6213 is not jurisdictional, what statute gives the tax court the authority to adjudicate petitions challenging notices of deficiency? What's the statutory provision if it's not in 6213? Your Honor, we'd say 6214. Isn't 6214 simply authority to award a deficiency greater than what the IRS found? Isn't that all that 6214 does? Your Honor, I'd respectfully disagree. The first part of 6214 does say the tax court shall have jurisdiction here in deficiency cases. But that's an issue that the amicus is prepared to go more in depth. And our argument does say in the alternative, even if 6213A does in fact grant jurisdiction, nonetheless, the filing deadline 6213A is still not jurisdictional either way, whichever the source of the deficiency jurisdiction is. So ultimately, today's case hinges on the government's ability to show that there's a clear statement that the filing deadline is jurisdictional. I think we agree that that's what Boesler and the court is telling us. I'd like to ask you a different question. Did the CULPS pay the taxes that were at issue? Yes, they did. If they paid the taxes, did they seek a refund? Your Honor, they didn't seek a refund directly. They did seek a refund by going to the tax court and filing in the tax court. And the reason why I ask that is, if they've done that, doesn't that make this challenge to the notice of deficiency moot? If they've already paid and they've taken steps to seek refund, what's left of the notice of deficiency? Isn't it moot? Your Honor, I would disagree. I do not think it is moot at this point in time, because they sought to get the refund in the tax court. So a predicate to getting that refund and having the tax court issue that refund will be first establishing whether it's jurisdiction under 6213A. So that's a threshold matter we first need to establish and get through. But 6213 deals with notices of deficiencies, not refunds. Refunds are a different provision, correct? Yes, that's true. So how the order of operations goes here is, first, there needs to be a determination whether that notice of deficiency is valid, whether it's sent. Then the CULPS would go into the tax court, and the determination is whether the tax court can even hear that issue. That's where we need to decide 6213A and whether it's jurisdiction or not. But the fact that they sought a refund, not a consideration, we don't need to focus on that at all? At this point in time, not necessarily. It is implicated, just in the point that when the CULPS did go to the tax court, they invoked jurisdiction under 6512B3. And that's been implicated. But first, we need to make the threshold decision whether 6213A is jurisdictional or not. Because that then will get us to whether the tax court has jurisdiction to issue that overpayment refund in 6512B3. Let me just see if I get the chain here correct. Did they eventually file for a refund after they paid the taxes? They did not file a refund through the typical mechanisms. They went to the tax court for relief in this situation. And the tax court would, theoretically, we get past this 6213A jurisdiction threshold issue. The tax court would then have jurisdiction under 6512B3 to issue that overpayment refund. So they're, in effect, they paid the tax and they're saying, we want a determination of what we should have paid, a determination of deficiency. Is that correct? Somewhat, Your Honor. There's also a difficulty in the procedure, posture of the situation if they were to seek a refund by paying and suing. There's going to be a host of implicated issues, statute of limitations, and all that type of stuff. So there is the potential argument that it's past that point in time. But this is all predicated. That really goes back to Judge Schwartz's question. If we're past that point in time, might what they suggest here be moot as to whatever they get back, I guess. What do you, what skin do they have in the game right now and what relief can be given to them? Yeah, so the relief, they could get that overpayment refunded to them by going to the tax court. If this court were to rule that section 6213A is not jurisdictional and they are subject to equitable tolling, they'd go back to the tax court. They'd have the ability to then have that adjudicated and get a refund under 6512B3. So that's their relief in this situation. Okay, so they're saying if 6213A is not jurisdictional with respect to a petition for a determination, redetermination or whatever it is, of deficiency, and they get, and they have jurisdiction, and they get a favorable ruling there, they won't file for a refund under 6213A because it's specifically taken away in a later sentence, but they would then be able to file in court for the refund? Well, that sentence does not take away, in this situation, that does not take away the court's ability to issue a refund. There's a separate... So it says the tax court shall have no jurisdiction to...order any refund under this subsection? Yes, I then point the court to 6512B3 because that allows, after a court makes a determination, that gives the court the ability to then issue a refund. So it does appear like it's a little bit anomalous there, but if you then say 6512B3, that also gives jurisdiction to the tax court to issue a decision that then allows them to compel the IRS to then give that refund. You mentioned equitable tolling. Did the CULPS preserve their right to argue equitable tolling with the tax court? Yes, they did, Your Honor. I point the court to paragraph 44 in their brief in the tax court because that speaks about the fact that the IRS prevented them from filing and moving forward and getting their refund, so that does implicate... The IRS prevented them from filing because they didn't receive the notice of deficiency? Is that the factual ground? Well, it's their belief, they did not receive the notice of deficiency, nor did they receive the notice of intent to levy, and then they worked with the Taxpayer Advocacy Service hand-in-hand for months and months and were told they were going to get this refund. So those would be the facts one would signal that there should be some forgiveness of their lateness. Am I understanding? Exactly, Your Honor. They don't say it by word, but they reference it in facts. Let me ask you about this then. What language in the statute shows us that Congress intended this deadline to be subject to equitable tolling? I would just say comprehensively. We could look at Beckler. In that case, they decided it was not jurisdictional, 6330 D1, that it was subject to equitable tolling. D1, there's a presumption that non-jurisdictional filing deadlines are subject to equitable tolling. So that's where we start with that presumption. And then looking at this whole procedure as a whole, deficiencies, deficiency jurisdiction, this is a, quote, unusually protective provision of taxpayer rights, as was collection due process in Beckler. So looking at it as a whole of the section, as well as the presumption, it's up to the But how could we ignore some of the statutory provisions within 6213 where Congress has already identified circumstances where the clock would be stopped? What do you do with that? I would point the court to Beckler as well. There's a number of exceptions in Beckler in the collection due process, 6330 D1, and those exceptions were not sufficient to flip the presumption onto the taxpayer to prove otherwise. Did Beckler only have one? What was that, Your Honor? Did Beckler only have one? Beckler, it referred to a number of them, including presidential declared disasters, taxpayers in military zones. So there were some exceptions there, as there are some exceptions in our statute, but the exceptions are not enough to flip the presumption, which is a strong presumption in Irwin v. Department of Veterans Affairs. Okay. All right. Let me just see if there's any questions for counsel. Okay. We'll have you back on the line. Thank you, Your Honor. Good morning, Your Honors, may it please the court, my name is Keith Fogg and I'm here representing the Center for Taxpayer Rights, the amicus in this case. My goal was to talk about equitable tolling, I know you've already started that discussion, but to go back to the deficiency discussion just for a second, it is very normal for the state to do refunds in cases where there's been an overpayment, so it's not an unusual part of a tax court case. Well, I'm glad you're here to talk to us about an equitable tolling, because I have a question for you that has to do with the ramifications of declaring the statute non-jurisdictional and allowing it to be subject to equitable tolling. I know you folks in your briefing did some arithmetic and tried to talk about the consequences, but very recently, the tax court had to issue its budget justification, as recently as the end of February, and in it, it said that 96 percent of the tax court docket is notice of deficiency litigation. If we were to allow this to be subject to equitable tolling, are we foisting upon the tax court the need to evaluate every single untimely petition when it's 96 percent of its docket? Actually, we're relieving the tax court of having to do that, Your Honor. Right now, they evaluate every single petition, and that's why, like last week, there were six cases dismissed at the end of the case when the parties were submitting decision documents, because the tax court said, wait a minute, we don't have jurisdiction, we've evaluated it. One of the cases we cited in our response to you on the Hallmark case involved a case where it was two minutes late. But how are we relieving the tax court, because now we'd be opening the door to anybody who was two minutes late, two years late, 22 years late, and the tax court's going to have to do an individualized analysis of each one of those petitions to determine whether the statute should be tolled. Only if the government raises lateness, Your Honor. So they don't have to do it in the 25,000 to 30,000 cases that are filed each year. They only need to do it in the cases in which someone has filed late, in which the government raises lateness as an issue. So we're projecting in our numbers that there are about 600 out of the 25,000 to 30,000 cases filed a year, about 50 a month or 600 a year involve late filed petitions. And in those late filed petitions, then the government would raise in its answer that, you know, Mr. Fogg filed his petition two days late, he should be dismissed from the court. And then it would be up to me to respond to that and say, here's my reason for filing late. What's happening today in those 50 a month cases where the court, you know, determines that it's late, about three-fourths of them are the government determining that it's late and one-fourth is the tax court determining that it's late. But when the government determines it's late, then they file a motion to dismiss before they file their answer and the court issues an order for the other side to respond. Only a handful of cases actually respond. So only out of those, you know, 50 cases, only four or five are responding and saying, here's why I was late. So we think that the number of cases that we're talking about, so we're bringing it down from, you know, 25 to 30,000 to 600 a year, we're bringing that down, we think about 30 to 40 a year of cases where people are responding and saying, I was late and I have an excuse. So I don't think that's a very burdensome number. Just for the benefit of the record, according to this report, 34,000 deficiency petitions were filed. I take your point. You're saying not everyone is going to involve an application where they're untimely. Not everyone is going to be met with a government motion to dismiss and not everyone is going to oppose that motion. And Your Honor, that's 34,000 cases in 2021, a very unusual year because of the pandemic. So if you go to the year before, it was only like 16,000 because the government shut down. And then when they caught back up, so a typical tax court docket at this point in time is around 25 to 30,000, but not that that makes a big difference. If we determine it's not jurisdictional, will that open avenues for individuals who would otherwise say, well, listen, the law says it'd be a waste of my time because the court has no power. And if the three of us were to decide, well, the court does actually have power, are we And that's, that's basically the government's argument that the number of cases will skyrocket. And I would say that that's wrong. First of all, nobody wants to file late. So it's not like people are going to wait so they can have the opportunity to make this argument about equitable tolling. So that's number one. Second of all, 75% of the people who are filing a tax court are pro se. So they're not, they're not reading Beckler. They're not, they're not going to read Culp. They're just trying to file their case on time. And if they miss, maybe they've got a good reason. Maybe they don't. So the 25 cases where the people are represented. Hopefully their lawyers are carefully reading the law and timely filing. But if they missed the time, they'll have, they'll have a good excuse or they won't raise the excuse. So I don't, I don't, it's not like people are going to, excuse me, my time is up, Your Honor. You can finish your answer. I don't think that there's going to be a lot of people going back looking. And in fact, if you look at the cases that have been decided under, under the court's new thinking, now 20 year old thinking, there's been, there's been cases. So eight years ago, there was a Voposelli case in the Ninth Circuit that says wrongful levy cases are, are, are claims processing rules. There hasn't been a tsunami of wrongful levy cases. Four years ago, the D.C. Circuit in the Myers case said whistleblower cases are, are subject to, to, to claims processing rules. No, no cases on equitable tolling under whistleblowing since that, since that four years. Beckler was decided almost a year ago. There hasn't been a tsunami of CDP cases. There just aren't going to be more cases. There's not going to be this group of people who've been waiting in the wings to, to come into tax court and make this argument. Do you have any questions for Stevens? Counsel, thank you so much for your argument. Thank you, Your Honor. Good morning, Your Honors, may it please the Court, Isaac Rosenberg for the Commissioner. I'd like to pick up where Mr. Fogg left off with respect to the number of folks every year who actually assert equitable tolling. He said it was probably 30 to 40 people a year. He also said, based on their calculations, however scientific those might be, that about 600 petitions a year are dismissed by the tax court as untimely. The jurisdictional implications here are significant because under Section 7459D, a dismissal on non-jurisdictional crowns will be res judicata of the deficiency determined by the, by the Secretary. That means, based on the, the amicus's math, 500 plus taxpayers a year under the regime that they see who either purposefully or inadvertently filed their petition a day, two days, three days late, or have no idea whether they can get an extension from the court are going to be foreclosed from getting relief, for instance, in bankruptcy. Probably not too often that somebody purposely misses a deadline. Probably not. And these are the taxpayers that Congress had in mind and that the court should worry about. The taxpayer who walks to the blue mailbox outside their house a day late or the day that their deadline needs to be postmarked, not knowing it hasn't, it's not going to be picked up in time. But let's go back to the, this is a 6213A is what it claims processing provision, isn't that right? No, Your Honor. The deadline? No. No. Is 6213A, the first, is that a claims processing provision? No, Your Honor. The first sentence of 6213A says within 90 days or 150 days after a notice of deficiency authorized in 6212 is mailed, the taxpayer may file a petition with the court for a redetermination of the deficiency. In other words, I want you to, I think it was incorrect, the deficiency, please redetermine it. Correct. And so that sounds like it's part of, that is typically called a claims processing provision. Is it not? I'm not sure about typically and I'm not trying to resist you. This statute is unusual because the jurisdictional grant to redetermine deficiencies is in the very same provision that authorizes the cause of action. So, 6213A, the language that says may petition the tax court for a redetermination, is the language in the statute, at least after Beckler, that gives the tax court its jurisdiction to redetermine deficiencies based on a petition challenging a notice of deficiency. Is there an argument that what gives them jurisdiction is 6214A? No, Your Honor. It's not. We've explained in our brief why not. So you're saying there's no argument at all to that effect? Well, there's an argument. They've made it. The argument's incorrect. I was incorrect when the specific language of 6214A says, quote, the tax court shall have jurisdiction to redetermine the correct amount of the deficiency. There are three problems with it. The first is grammatical. There's no comma before the even if. So you can't say full stop, the tax court shall have jurisdiction to redetermine deficiency, stop, comma. Even if. There's no comma separating it. The second problem is the heading of the statute says jurisdiction to determine increased deficiencies. That heading has been there since 1928, right? This is contemporary. This is the time when Congress was altering the authority of the Board of Tax Appeals to determine deficiencies in excess of what the commissioner had determined in a notice of deficiency. So, originally, and I apologize if this is a little bit tedious as far as history goes, in 1926, with the Revenue Act of 1926, there was an actual provision that gave the Board of Tax Appeals jurisdiction and identified four specific substantive statutes. If, rather than talking about history, if we could talk about the statutes that govern? Yes. If it's not in 6214A, as Judge Ambrose and I are asking you, where is it in 6213 that says that gives the tax court jurisdiction to review these deficiency notices? It's the first sentence of the statute. You go later on, the talk of jurisdiction is in the penultimate sentence. The tax court shall have no jurisdiction to enjoin any action or proceeding or order any refund under this subsection unless a timely petition for a redetermination of deficiency has been filed. So, in other words, you have to file it and then only in respect of the deficiency that is the subject. But it doesn't specifically say, redetermination of deficiency, there is no jurisdiction. And the Supreme Court in Beckler has made it, there has to be a clear statement that there is no jurisdiction. And it looks to me like one could argue that this is a clear statement that for redeterminations of deficiency, there is jurisdiction. So help me, tell me how I'm wrong. The third sentence of 6213A grants special remedial jurisdiction for assessment and collection that occurs during a blackout period between when we mail the notice of deficiency and the deadline to file a petition. The fourth sentence strips the tax court of that special remedial jurisdiction if the petition is not timely filed. Under Beckler, taxpayers could still go to a district court to get an injunction, maybe a refund for anything that the government does improperly during this blackout period. That's where that fourth sentence concerns. What Hallmark said was that language helps, doesn't establish clearly, but certainly helps demonstrate that the grant of jurisdiction for deficiency redeterminations is in 6213A. What's odd is, so we're supposed to focus on the language here. And here, you know, several sentences, 200 words are separating the relevant parts. And Hallmark never identifies what in the statute actually is the clear statement. Instead, it spends most of its time on a century of tax court case law. But that's not a clear statement in the text. Language has been debunked in Beckler. I mean, you can't go back and look at stare decisis. Right. So if we were just looking at the text alone, we might, we'd have a good argument. We might not have a clear statement. We'd probably lose. Okay. Okay, under Beckler. Right. But this is not Beckler, and this is not 6330D. And the context and the relevant historical treatment are substantially different. The only times the Supreme Court has said, well, this could matter is when its own case law, maybe its own case law might have been codified. But the tax court treats its case law as something that Congress has notice of. I don't see the basis for allowing the tax court's cases to substitute for a clear statement in the text. It's not, Your Honor, it's not just the tax court's cases. It's also circuit court cases. But the Supreme Court has made it clear, our cases, our Supreme Court cases, you can't really look beyond that. Okay. In 1998, when Congress passed the Restructuring Reform Act, that's the act that created the CDP process, which gave taxpayers a new right to challenge an underlying liability in CDP if they didn't actually receive the notice of deficiency. It's on 6330D. Right, in 1998. And that's the same year that Congress added the last sentence of Section 6213A that says, if the commissioner tells you the wrong date to petition in the notice of deficiency, the time for filing is up until the date that the commissioner tells you in the notice of deficiency. But that is a liberalizing remedial provision. You have to read a strong negative inference from that? If I may, Your Honor, what Hallmark said was applying the prior construction doctrine. We can look at the conference committee report. This is the best legislative history there is if the court cares about legislative history. This is the Joint Committee of the Senate and the House hashing out this bill. They were clearly aware of the nearly 100-year of unbroken, unwavering case law treating the filing deadline as jurisdictional. And in saying why they added this last sentence of 6213A, they did it because they understood the deadline was jurisdictional. But that's not in the text. I want to let my colleagues talk more about the text. I do want to get to equitable tolling at some point. Go ahead. So when I look at equitable tolling, you start out with a thumb on the scales against you, right? The presumption is in favor of equitable tolling under Irwin. So what overcomes it? You've got two arguments here. You've got the exceptions and you've got administrability here. So almost everything else is against you. So talk to us about administrability first. You know, Brockamp involved 200 million tax returns and 90 million refunds. Batchelor involved 27,000 notices to taxpayers and 800 cases in the tax court. This case is in between. It's about 2 million notices of deficiency but only about 16,000 cases in the tax court. And your friend on the other side gets that, okay, maybe that's 500 cases over the course of a year or something. So why should we treat this case as unadministrable when the numbers, it's in between but closer to Batchelor than to Brockamp? It's not strictly the numbers. The entire system of assessment and collection hinges on the date of assessment. And the date of assessment depends entirely on this period of time between when we mail a notice of deficiency and the deadline to petition the tax court. That deadline has to be firm. If it can be changed, then when we can assess is going to be up in the air. We cannot get our statutory lien until we assess. We cannot proceed with collection and demand payment until we assess. That's just a precondition to jurisdiction then, right? I'm sorry, Your Honor. That's like a precondition on your end to having jurisdiction. We've made the argument in both respects, but especially with respect to equitable tolling. The concerns that animated Brockamp applied here with force. If we cannot assess, if when we can assess is debatable. For instance, a taxpayer files a late file petition that asserts equitable tolling and is allowed to come in 120 days late. We've already assessed, which means our statutory lien under Section 6321 has already attached, which means we get priority for purposes of collection. The CULTS have said in their brief that if they file a petition and it's accepted as told that the assessment should abate, the government is going to lose priority. Collections that have already begun or have been concluded, what's going to happen with those? Are they going to have to be reversed? Are they going to have to be suspended? What happens if the case proceeds to a decision in a tax court? It's not all good for taxpayers. The government might get a new 10-year statute of limitations to collect because as soon as we assess, we get a fresh 10-year statute of limitations to collect. So if I could just make sure I understand what you're saying. You're saying that if a taxpayer after the deadline raises a challenge to the notice of deficiency, the government has already, because of their non-challenge, has started the assessment process. In the appropriate case, it started to levy its lien, et cetera. So that's what you're saying is all that process will be going on. And if six months, six years, 16 years later, somebody is permitted to come in and seek to challenge the notice of deficiency, it would require the unraveling of the collection process and the assessment. If the cops are right that the filing of a told petition is permissible, then our assessment abates. We're going to lose our lien. We're going to lose our priority. Collections might have to be undone or unwound and then redone. Do they necessarily lose those things, or do they just get put in suspension or abeyance until this is resolved? Well, if our lien is good, our lien is good. But if the assessment is abated and they get to go all the way back to the beginning, go all the way back to the notice of deficiency, and that lien is terminated, all junior creditors are going to advance ahead of the government. Our statutory lien attaches effective the date of the assessment, and if the assessment is undone, then it's undone. There's no answer for that. Okay. Well, that might be an argument against canceling the lien, but isn't it consistent with that to allow the challenge of the assessment? And if ultimately the challenge is upheld, then at that point we could deal with undoing the lien without rather undoing it at the front end. Well, but all of these things are automatic in the statute. So stepping back, when we talk about is there something in the statutes, in the text, that shows that Congress intended for the deadline to be told? There are lots of reasons why not, not just with respect to jurisdiction. No, they don't need a clear statement. You need something. Right. Brock can't express some doubt whether the Erwin presumption even applied in the tax context, but went ahead anyway. The deadlines here work just as stringently as they should under 6511, right, because all of our mechanisms for administrative relief hinge on assessment, and an assessment cannot occur until this deadline comes and goes. What if we held, okay, you've done an assessment, you know, the lien, you can't enforce on the lien yet or anything else, but the lien will just stay there until the, you know, if the assessment ultimately gets canceled out, then at that point you have to undo it. But why is it that necessarily, you know, because the big consequences you're pointing to here are if you lose all your priority on your lien, as opposed to maybe you can't enforce on it for some time. So what would be the problem if the lien were not invalidated at the front end, but just you can't go in and enforce and collect yet until it's been determined? There wouldn't be any problem with that in the same sense that we don't have an assessment, we don't have a lien when a petition is timely filed within the deadline. But I don't know by what authority the court could say that the lien is somehow preserved, but the assessment is somehow abated, because those are tied by statute, right? And again, we're talking about Congress. Which revision of the statute says that the one can't, has to be wiped out like ab initio if the other one goes where? Our statutory lien, 6322, says that the date of the lien is effective the date of the assessment, and 6321 prescribes when the lien comes with notice in demand for payment. I see that my time has expired. My colleagues, I think, have some questions. Yeah, this is an interesting case. The interesting thing is you've got a 17-zip decision of the tax court that 6213 is jurisdictional, 6213A. And when I read through it, there's very little discussion of Beckler, only toward the end. It almost keeps hitting me this is perceived by the tax court as we've got a whole lot of work, and we don't need a whole lot more, and you're getting pushback from the Supreme Court who's saying that these provisions are written for the benefit of taxpayers and to be, as one example, a day late or a few minutes late, too bad, you lose, that's the way it is. And it looks like it's a, there's a perception, I think, what I'm seeing in the Supreme Court decision, that it's, that just goes too far. With respect to CDP, but this is a very different animal, and 7459D is incredibly important in this context. But even Beckler, did Beckler not mention 6213A at one point? It did only with respect to whether there was any persuasiveness to the long line of cases interpreting 6213A as an argument in favor of a jurisdictional reading of 6330D. I mean, what it looks like to me is there was a retreat. I mean, the Supreme Court in 04 in Kendrick v. Ryan and then in Arbaugh in 06 is saying, you know, we ourselves have been kind of back and forth on deadlines. Henceforth, a claims processing matter, and you may dispute whether this is a claims processing matter, must have a clear statement that it's jurisdictional. And unless it's really clear, we are not going to find, we're going to find that there is jurisdiction. Isn't that correct? Yes, Your Honor. And I can see the writing on the wall with the Supreme Court. How do we get around that? I mean, I realize that the Court tried in 42 pages of Hallmark, but it looks to me like they're pushing water uphill. 7459D does not apply to CDP. It doesn't apply. It does apply here. If, rather, 7459D does apply to CDP, but the consequences are very, very grave when it comes to deficiency petitions, and it has always been this way, at least since 1928. A dismissal on non-jurisdictional crowns is res judicata. And it would be a very perverse system for Congress to adopt. It's supposed to be very solicitous of taxpayers in protecting them if they mistakenly file a minute late or a day late to enjoy this extra remedy, this prepayment remedy, and then cut off all the other prepayment remedies that Congress has made available to them and lose out on their actual due process remedy of a refund suit. I just pulled up 6321 and 6322, and neither of them is super expressed, but 6322 says, unless another date specifically fixed by law, the lien imposed by 6321 shall arise at the time the assessment is made. You know, an assessment can be made, the right can accrue, and a tolling requirement then just stops the clock or pauses things during that. There's nothing in this that says the lien itself has to fall just because something is being told. So I understand your concerns that we ought to consider those, but it doesn't seem like it's necessarily fatal to the validity of those liens. There's no statute. Again, the question on equitable tolling is, is it clear from the statute, right? Did Congress intend to leave room, right? Or is it clear from the statute that Congress didn't intend to leave room? Yes. In the last sentence of 6421 in particular is a tolling provision that Congress adopted, expressio unius. If Congress wanted other equitable grounds to be available to toll the deadline, they would have left some room in the statute. Congress normally, the Supreme Court has repeatedly said we're not just supposed to be grading the Congress's drafting. They could have done it more clearly. It's not enough to overcome this presumption. But anyway. I'd like to go back to just, I'm sorry, I do have two questions for you, and then I'll see if my colleagues have anything further. So 6321, 6322, going back to the consequences you were talking about, you described that the assessment comes to exist once the period to challenge a notice of deficiency is expired, right? Well, once that period comes and goes, 6213C commands the Secretary to assess and demand and collect. And it says the tax shall be paid. And then a separate statute gives the Secretary time to assess, gives the Secretary time to make the assessment, and then to make a demand for payment. And I gather your concern is the assessment goes on the books, a lien takes effect on property for which collection can be sought. And as you're in the lien process, in the collection process, then the taxpayer comes back and challenges the notice of deficiency. Yes. Right? And so your concern is there would have to be a rewinding of the lien, would have to be lifted, because if the tax court determines that this now untimely petition becomes timely because the period's been equitably told, by operation of 6213 everything gets undone? It says any assessment or collection during this blackout window is verboten and can be enjoined, right? That's collection, but that's not a lien. No, it says assessment, right? Even the assessment, you can't assess, but what happens if you have assessed? If you've already assessed. Right. And what the colleagues have argued in the reply brief is that if the petition is accepted out of time based on tolling, the assessment abates. It's a nullity. So because the assessment is a conditioned precedent to having a lien, everything gets vacated? Yes. But what if the lien has already validly been imposed? It doesn't imply that the lien itself becomes void at that point, only maybe it's voidable if they succeed on the assessment challenge. But every other creditor who's junior to us, a house that's mortgaged to the hilt, is going to see that abate and they're going to step forward, and any opportunity for the government to get recourse from a valuable piece of property, however. But if you're a senior lien holder, then you're protected against that. But you say you're losing priority. That's right. In theory we'd lose priority because the assessment's gone and that would theoretically undermine. It all depends on whether we understand the assessment's necessarily destroying a lien that was attached earlier or at what point the lien gets removed. I'd like to know if there's a statutory provision that bears on what happens to that lien, but it's not obvious when I just look at the statutes here. What is clear is that these are very incisive questions for which there don't appear to be ready answers, and if Congress intended for this to be the conversation, it would be more clear from the statute that this was a possibility. Let me just make sure I understand what the bidding is here. If you have a lien against me because I have not paid all of my taxes, when does that lien come into play and when is it perfected against, for example, my property? The lien comes into existence when we make a notice in demand for payment, which happens after assessment. The date that the lien is effective is the date of assessment. That's the combination of 6321 and 6322. And then so it's a lien against my property, and if I try to sell my property, that lien's going to be noted in the recorder of deeds office, will it not? It should be, but it's an automatic lien. So to be good against other creditors, we would have to file a notice, a federal tax lien. You seem to have to do that at the recorder's office because a deed searcher needs to find that in connection with the closing statement. Yes, and our lien is good not only for property that exists at the time that the lien comes into existence, but all future after-acquired property by the taxpayer until the tax is paid for the taxpayer's life. Is this the anomalous result Hallmark was trying to tell us would happen if the taxpayer could equitably toll? There are a number of anomalous results. Is this one of them? This is an anomalous result, and this is probably one of the most worrisome because our statutory lien is our most powerful administrative tool for collection. It is. And that's why all these deadlines are structured in the way that they are. They are shall, shall, shall, shall, shall. And the question for equitable tolling is, yes, there's an earned presumption, but we have repeatedly stated in the statute throughout different provisions, there are parts of 6213a that depend on this deadline. We have, you know, it's repeated, it's emphatically stated, and it's not just this statute that depends on this deadline. There are substantive tax provisions that depend on this deadline. All right. Thank you, counsel. Thank you. Your Honor, just a couple of remarks going to the jurisdictional issue here. I think one of the most important things the government just said was they just conceded that if Bechler applies here, they lose because they have no clear statement. And the only remaining thing that they're hanging onto here is trying to distinguish Bechler from our case by saying 6213a is not 6330d1 like it was in Bechler. However, Bechler gave us the analytical framework to follow and apply here. Do you have any response to your adversary's commentary about the lien and the consequences, or should we ask Mr. Fogg to join us back in the well to address that point? I think Mr. Fogg would be the best person to address that. He definitely has a lot of commentary. With a big smile on your face. Mr. Fogg, we are going to defy the rules and let you rebut. I can pass the book. He's excited to come up. He's whispering in my ear and letting me know. He's excited about it too. A lot of good stuff. Yeah, to that point, the only thing that the government has left is to distinguish 6213a from 6330d1. I point the court to a line of cases. Vennon, back in 1998, this case addressed Section 7433, and the Third Circuit held that this exhaustion requirement of this section was, in fact, jurisdictional. The Supreme Court came in with Arbaugh in 2006, gave us an analytical framework, and that evaluated a totally different statute, Title VII. Then, in Hassen v. Government of Virgin Islands, authored by Judge Schwartz, the court took that framework from Arbaugh, applied it, again, to 7433 to overturn Vennon from 1998. So there's a clear history in this jurisdictional realm where the Supreme Court gives a clear analytical framework to overturn a statute that may not be the original statute that the Third Circuit addressed. So there's clear precedent on point here for you to use the Beckler framework to overturn the prior precedent in this case. We recognize that it has been abrogated by intervening developments. Your Honor, I think the fact that applying the analytical framework in itself, just that principle of using that and being able to apply that, is what's important here. And Beckler is clearly on point. There's a long line of history, 20 years, 12 cases, applying this framework. And there's no reason why 6213A should not get the same treatment as that standard. We just stated in the transactional world, very simply, the state of the art has changed. What was that, Your Honor? The state of the art has changed, in effect. I mean, the court has taken a new direction. It's a pivot. Okay. Well, thank you, counsel. Thank you. Mr. Fogg, we're defying rules, and we're going to ask if you have any thoughts you can share with us about the government's explanation of the consequences of allowing this statute to be equitably told, specifically on the assessment, the lien, et cetera. Yeah, I think the government confused what will happen here, because you don't even need to rule for the cults here for there to be the same problem. Mr. Roberts argued in this court three years ago, a case by the name of Gregory, in a situation that comes up regularly, not routinely, but regularly in the tax court, where people don't get the notice of deficiency, even though the IRS sent it to what was presumably their last known address. So the 90 days passes. The government can assess. The government does assess. It needs to assess, because the statute of limitations is running. That's really what the 6213C is directing them to do, what they must do, in order to preserve the statute of limitations. So they assess. Now, in come the Gregory's in that case, and say, well, you didn't send the notice to the right place. It was wrongly sent. And the Third Circuit said, we agree with you, Gregory's. This is happening now two or three years after the sending of the notice of deficiency. All that time, the assessment is on the books. The statutory lien, I'm not sure about the notice of federal tax lien, but the lien stays there. Once this court or the tax court or whatever court rules that's a bad notice of deficiency, then the tax is abated and the lien comes off the books. So that's exactly what will happen here. So in my projection, 30 cases a year. Or if it's modified, then the lien gets noted as a lesser number. Yes, Your Honor. But if the notice was sent to the wrong address, it's simply an invalid notice. So the whole assessment is going to come off. At what point would there be recordation of the lien, such that other buyers or purchasers would have some idea that it's here? Well, that's up to the IRS. So their policy is generally to file the notice of federal tax lien when you owe more than $10,000. But that filing will normally not occur until they go. So once they make the assessment, then they send notice in demand, and they have three or four other letters they send up to the CDP notice. And it's usually after that at some point, if you owe $10,000 or more, that they'll file. There's still going to be bona fide purchasers in the intervening period who are going to wind up being junior creditors without really knowing it. No, no. They'll be senior creditors. Oh. They're senior creditors because the lien, the assessment lien, is a secret lien. Okay. So in 6323A, so that's the statute that gives you the who's going to win. So 6323A says there's four people that are going to defeat the unfiled federal tax lien. So purchasers would be one of those. Holders of mechanics liens, and that's not car dealers. That's builders. Judgment lien creditors. Why am I blanking on the fourth? But anyway, there's four there. And those people, if they come in before the IRS lays down that notice of federal tax lien, then they defeat, they come ahead of the notice of federal tax lien. The old 9310 of the old UCC. I don't know what it is under the new. It relates. It's the same kind of idea. I mean, this was created in 1966 in the Federal Tax Lien Act. And then you have 6323B that says there's ten creditors who are going to defeat the federal tax lien, even if it's been filed, because we need that to be able to defeat it. And then there's people in ACE of priority and the bankruptcy and all of that, right? And if I could just talk about bankruptcy for one moment, because it responds. I know Judge Ambrose is a world expert, but I want to respond to a question that was raised about what's the meaning of the last sentence of 6323A? Does that take away the court's ability to give equitable tolling? And the argument the government's making here today is interesting because it's the exact opposite of the argument they made in the case by the name of Young v. United States. In that case, the taxpayer filed a tax return and didn't pay. Made a few payments. About a year and a half later, goes into Chapter 13. Sits in Chapter 13 until the time period for filing a priority claim in bankruptcy expires, which is three years from the due date of the return. Dismisses his Chapter 13, which he has the right to do, and immediately files a Chapter 7. Gets a discharge in Chapter 7 and says, I've discharged my taxes because at the time I filed my Chapter 7, they were more than three years old, so they weren't entitled to priority under 507A8, and therefore they weren't accepted from discharge under 523. The government said, well, that's not fair. We should have a tolling. We should have equitable tolling of the time period that you were in bankruptcy. And the taxpayer says, no, you shouldn't, because 507A8A2i has a specific provision that says when there's an offering compromise, you get a tolling. And they didn't mention prior bankruptcy cases. And so that was the taxpayer's response, exactly what the government is arguing today. And the Supreme Court said, no, that doesn't keep us from granting equitable tolling. And they gave the government equitable tolling in that case. So I'm very surprised the government, having won that case, would come in and make a similar argument here. But are there other questions that I can address? Very helpful. I've been asked by my colleagues to thank you for appearing as an amicus, thank counsel for their excellent arguments. You can have a seat. But we are going to ask counsel to split the cost of a transcript of this argument. And so you can speak with our crier today to make arrangements for that. But we thank counsel for their excellent arguments in their briefing, and we'll take the matter under advisement.